This is the third time this matter has been before us. Defendant was charged with murder. He was convicted and sentenced to be hanged. On appeal, we annulled the sentence and remanded the case, with instructions to try and determine the issue, first, of present insanity; and, secondly, whether defendant had become insane since his trial. State v. Brodes, 156 La. 428, 100 So. 610.
The case came before us for the second time on the application of the defendant for writs of mandamus, prohibition, and certiorari to review the proceedings which were had in the district court in an attempt to comply with the mandate of this court. We found that the proceedings were irregular and not in compliance with our decree, and we accordingly *Page 342 
set them aside, issuing the writs as prayed for. State v. Brodes,157 La. 162, 102 So. 190.
The present appeal is from the judgment resentencing the defendant to be hanged in accordance with the verdict of the jury previously found. The judgment appealed from was rendered after a hearing was had, and after the district judge had reached the conclusion that the defendant was sane at the time of his trial and also sane at the present time.
The decree in the proceeding in which the remedial writs were applied for (157 La. 162, 102 So. 190) became final and executory some time near the end of the month of November, 1924. The issue ordered to be heard and determined on the first appeal of the case (156 La. 428, 100 So. 610) was evidently fixed for trial shortly thereafter, because we find in the transcript a copy of a motion filed by defendant's attorneys, under date of February 6, 1925, in which they pray for a continuance until May 10, 1925, because of the absence of an alleged important witness, one Capt. Conway, by whom it was declared they expected to prove that the defendant was discharged from his employ for the reason that said defendant "suffered from fits of periodical insanity." The minutes of the court of date February 6, 1925, show that the motion for a continuance was taken under advisement by the judge. Nothing further seems to have been done in the matter until May 14, 1925. In the meantime, the term of the judge who presided at the trial of the defendant had expired, and he was succeeded by the judge who heard the proceedings and rendered the judgment which are now before us on this appeal.
On May 14, 1925, the state, through the district attorney, filed a rule against the defendant, in which he averred that the delay asked for by defendant, through his attorneys, for the production of the absent witness, had expired, and that the state was *Page 343 
desirous of having the cause set down for trial, so that the matters which the court had been instructed to inquire into by the Supreme Court might be finally determined. These matters were set forth in the rule. The court ordered the defendant to show cause on May 25, 1925, why a hearing should not be had as to the matters referred to in the decision of the Supreme Court, and directed that a copy of the rule and order of court thereon be served on the defendant and on his attorneys.
On May 25, 1925, the rule to show cause came on to be heard, when defendant, through his counsel, moved for a continuance until June 4, 1925, in order to permit him to take the testimony of the witness Capt. Conway, who was represented as being absent from the city of New Orleans. The continuance applied for was refused, but the court granted defendant until June 4, 1925, to produce the absent witness. Counsel for defendant then objected to taking any testimony at that time, on the ground that the notice was for the defendant to show cause why a hearing should not be had at a later date, and that defendant was entitled to a regular notice of trial, in order that he might summon his witnesses and proceed in accordance with the mandate of the Supreme Court. The trial judge then ruled that he would grant defendant until June 4, 1925, to produce his witnesses, but announced that he would hear the testimony of Dr. O'Hara, who intended to leave the city on June 1, 1925, to be absent for four or five months. Dr. O'Hara was formerly the coroner of the city of New Orleans, and was one of the alienists who had been previously appointed by the court to examine into the mental condition of the defendant at the time of his trial and subsequent thereto. The witness was then placed on the stand and examined by counsel for the state and exhaustively cross-examined by counsel for defendant. On the same day, Dr. Unsworth and Dr. Daspit were also examined *Page 344 
by counsel for the state and cross-examined by counsel for the defendant. Dr. O'Hara was then recalled by the court and again cross-examined by counsel for defendant. Capt. Rennyson, warden of the prison, was also tendered, examined and cross-examined. At the conclusion of his testimony, Dr. O'Hara was again placed on the stand by the state. Counsel for defendant then objected to the witness testifying, on the ground that he had been on the stand twice, and the state had no right to recall him. This objection was overruled, and Dr. O'Hara was subjected to further examination and cross-examination. Drs. Unsworth and Daspit were also recalled and again examined by counsel for the state and cross-examined by counsel for the defendant. The hearing was concluded on behalf of the state by the placing on the stand of Hon. R.A. Dowling, the former trial judge, who was examined and cross-examined. After this witness had given his testimony, the trial judge announced that he would recall his ruling, and would give the defendant until June 5, 1925, to produce any witnesses who might be able to throw any light on the matter, and in open court informed counsel for defendant that the court would give him any aid required in getting his witnesses through the sheriff's office.
When the case was called on June 5, 1925, counsel for defendant filed a motion for a continuance, on the ground that one of defendant's expert witnesses, Dr. Joseph A. O'Hara, was absent, said continuance to be until such time as Dr. O'Hara could be brought into court to testify. The court overruled the motion, stating that, when the case came up for trial on May 25, 1925, counsel filed a motion for a continuance on the ground of the absence of a Capt. Conway, who was a material witness, and who would be in the city on June 5th; that the court then informed counsel that Dr. O'Hara would leave for Europe, and that he would hear the doctor's testimony; that Dr. O'Hara was sworn *Page 345 
as a witness and exhaustively examined by defendant's counsel.
The hearing was then resumed, and counsel for defendant called and examined as witnesses Dr. Unsworth and Dr. Daspit. He also placed on the stand nine other witnesses, two of whom were deputy sheriffs in the prison, and the other seven of whom were prisoners held in said prison. The hearing was then concluded, and the trial judge rendered his opinion and pronounced his judgment.
The first complaint addressed to this court by counsel for defendant is that he was never able to ascertain if a copy of the rule and order to show cause for May 25, 1925, was served on the defendant, and that the transcript does not show any such service. He admits that he was served personally with the papers on or about May 18, 1925. Under two writs of certiorari issued by this court, the clerk of the district court has sent up, first, a copy of the sheriff's return, and, secondly, the original of said return. From this return, it appears that a copy of the rule and order in question was served personally on the defendant in the parish prison on May 14, 1925. This effectively disposes of the complaint that the requisite notice was not given to the defendant. It is to be observed, moreover, that the defendant was present at the bar of the court, attended by his counsel, on May 25, 1925, and also on June 5, 1925, when the hearing was had on the rule.
The next complaint urged by counsel for defendant is that they were led to believe, from the language of the rule and the order thereon, defendant was to show cause only on May 25, 1925, why the trial as to his mental condition should not take place on a later date. The pleading, perhaps, could have been made plainer, but we think the fair import of its language is such that it should not have misled counsel. It is styled, "Rule to Show Cause why Sentence should Not be *Page 346 
Pronounced." Its recitals show the state of the case, the verdict of guilty and the sentence to death, the setting aside of the sentence by the Supreme Court, and the remanding of the case for the purpose of ascertaining the mental condition of the defendant at the times specified, the appointment of the lunacy commission by the trial judge, and the report of said commission, the request of counsel for defendant for a continuance until May 10, 1925, in order to give them an opportunity to produce the witness Capt. Conway, the expiration of this delay, and the desire of the state to have the matter set down for trial in order to have the matters which the court had been instructed to inquire into by the Supreme Court finally determined; and the order of court indicates that the required hearing was to be had on the day named, to wit, May 25, 1925. But whatever view may be taken of the contention, the fact remains that no injury was suffered by defendant, since he was granted a continuance until June 5, 1925, for the purpose of giving him an opportunity to produce and examine his witnesses. His counsel vigorously cross-examined the witnesses placed on the stand on May 25th; and his counsel recalled and re-examined two of these witnesses, Drs. Daspit and Unsworth on June 5th. Dr. O'Hara was out of the city at that time, and counsel for defendant was evidently satisfied with the testimony which had been given by the other witnesses, Warden Rennyson and Judge Dowling, as they were not resummoned for the later hearing.
The third and final complaint of counsel for defendant is to the action of the court in overruling their motion for a continuance, filed on June 5, 1925, until the return of Dr. O'Hara, to whom they had caused a subpœna to issue to appear as a witness for defendant on said date. It appears from the record that the subpœna to Dr. O'Hara was applied for on Friday, May 29, 1925. It is to be noted that the next day, Saturday, May *Page 347 
30, 1925, was a half holiday, and the following day May 31, 1925, was Sunday. The assistant district attorney testified that Dr. O'Hara had informed him that he intended to leave New Orleans on June 1, 1925, for New York, from which port he was to sail for Europe, to be gone for four or five months, and that he had subsequently learned that the doctor had actually left New Orleans as he had planned to do. This evidence was not contradicted, nor even controverted, by defendant's attorneys. The deputy sheriff to whom the service of the subpœna was intrusted testified that he had called at Dr. O'Hara's office for the purpose of making the service, but had found the doctor absent, and he was informed by the maid in charge that he had left the city and would be gone until October, and he (the witness) was therefore unable to serve him. Counsel for defendant contend that the deputy should have visited the home of the prospective witness in order to make the service, and that his failure to do so did not show due diligence, and that defendant was deprived of the benefit of compulsory process to procure the attendance of the witness.
The district judge, in his reasons for overruling the motion for a continuance, among other things, stated that, when the cause was being heard of May 25, 1925, he had then and there informed counsel for defendant that Dr. O'Hara would leave for Europe, and it was because of that fact that he would hear his testimony. The transcript shows that the trial judge on May, 25, 1925, at the very inception of the proceedings, informed counsel for defendant that Dr. O'Hara was to leave New Orleans on June 1, 1925, not to return for four or five months. On May 25th, Dr. O'Hara was on the stand three separate and distinct times. When he was recalled for the third time, counsel for defendant objected to his testifying, on the ground that he had already been on the stand twice, and that the state did not have the right to recall him *Page 348 
for further examination. While the witness was on the stand, he was subjected to an exhaustive cross-examination by counsel for defendant.
In connection with this particular complaint of defendant's counsel, it is to be remarked that, in their application for a continuance on the ground of the absence of Dr. O'Hara, they did not set forth what they expected to prove by the witness. Nor do we think the defendant suffered any harm by the failure of Dr. O'Hara to appear and testify on June 5, 1925. As we have heretofore stated, he testified fully in the matter on May 25th. If he had been placed on the stand on June 5th, it would have been only for the purpose of going over the same ground which was covered in his prior examination and cross-examination. This was actually the case with Dr. Unsworth and Dr. Daspit, who testified on both dates. The testimony of all the doctors concerning the mental condition of the defendant was along the same lines, and was in accord on the main points.
We think if counsel for defendant seriously desired to obtain further testimony from Dr. O'Hara, and the issuance of the subpœna to him was not merely for the purpose of securing more delay, with the knowledge they possessed of his intention to leave for Europe on June 1, 1925, they could have taken measures between May 25th and June 1st to obtain said testimony to be used on the trial of the case when it came on to be heard on June 5, 1925. It is our conclusion, therefore, that this complaint of defendant is without merit.
Inasmuch as this court in criminal cases is vested with the power of passing upon questions of fact which the trial judge has decided, and which do not pertain to the question of the guilt or innocence of the accused (State v. Moore, 140 La. 281, 72 So. 968; State v. Smith, 145 La. 913, 83 So. 189), we have carefully examined the testimony given in this matter, and which is set *Page 349 
out in full in the supplemental transcript on file herein, and we think it amply supports the finding of the district judge.
While the testimony of the three medical experts is to the effect that the defendant is mentally of a low grade, they all agree, and assert, in most positive language, that he is possessed of sufficient reasoning power and judgment to know right from wrong, and that he is not presently insane, and that such was his mental condition at the time he was tried on the indictment for murder. There was some attempt made to show that defendant suffered from epileptic fits, but the attempt failed. There was testimony to the effect that the defendant, from time to time, was overcome by a fit or spell. The physicians, however, testified that these spells were not epileptic in character, and that the defendant was not a sufferer from epilepsy; that he was one of a great many of the negro race who are of a nervous hysterical type, who have such spells, but know what they are doing during the seizures. We gather from the testimony of the deputy sheriffs that these fits or spells only began to attack the defendant after he was sentenced to death. The other witnesses, inmates of the jail, who testified as to the spells, apparently have been placed in prison since defendant's sentence, and their testimony covers the period subsequent thereto.
For the reasons assigned, the judgment appealed from is affirmed.
O'NIELL, C.J., dissents, and will hand down reasons.