215 So.2d 634

**STATE of Louisiana**

**v.**

**Alex J. AUGUSTINE.**

No. 48826.

Nov. 12, 1968.

Eugene N. Scallan, Marksville, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Charles A. Riddle, Jr., Dist. Atty., John A. Boatner, Jr., Asst. Dist. Atty., for appellee.

BARHAM, Justice.

This is an appeal by Alex J. Augustine from his conviction and sentence to death for murder. The crime was committed in November, 1962, and Augustine was tried and convicted a year later. More than four years elapsed after conviction before this appeal was lodged with us.

A lunacy commission acting under an order dated January 28, 1963, failed to reach a conclusion as to the defendant's present insanity, and another commission appointed in March reported the defendant to be presently sane. On October 9, 1963, counsel for the defendant applied for a lunacy commission to inquire into both present insanity and insanity at the time

of the commission of the offense. On October 23, at the conclusion of a hearing on present insanity, the court found the defendant able to assist counsel and to stand trial, and the case was fixed for trial. Two days later the defendant was allowed to withdraw a plea of not guilty in order to file a motion to quash. After this motion was overruled, the defendant was brought to trial without rearraignment or the entry of a special plea on his behalf, although the question of insanity at the time of the crime was apparently submitted to the jury.[1]

The defendant reserved a bill of exception to the overruling of his motion to quash the indictment. The testimony taken at the hearing on this motion, except for the testimony of the chief deputy sheriff, was not attached to the bill as counsel had requested, nor was it supplied at our request. The written reasons of the trial judge, which we obtained only after much difficulty, and the deputy's testimony constitute the only record of the hearing available to us.

 Only that which is in the record may be reviewed, and it is the obligation of the appellant to bring his appeal properly before this court. State v. Morgan, 147

La. 205, 84 So. 589, cert. den. 253 U.S. 498, 40 S.Ct. 588, 64 L.Ed. 1032.

 As the first of 10 grounds forming the basis of his motion to quash, the defendant, a Negro, urges a systematic inclusion on the grand jury venire and the grand jury panel of a token number of Negroes disproportionate to the population. The district judge pointed out that there were four Negroes on the grand jury which indicted the accused, and concluded that this was not token representation or systematic inclusion. The constitutional requirement is only that a fair jury be selected without regard to race, and not that there be proportional representation of the races and nationalities. Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692; Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839. The judge also found that the venire from which the grand jury was drawn did not reflect either systematic inclusion or token representation of Negroes, and there is no evidence before us to contradict this finding.

 The trial judge correctly overruled the accused's objection to the indictment based upon the exclusion of women from the jury venire. Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118; State ex

---

1. We merely note the absence of the special plea of not guilty by reason of insanity and necessity of joinder of that issue as required by former LSA–R.S. 15:261, 15:268. See State v. Toon, 172 La.

631, 135 So. 7; State v. Eisenhardt, 185 La. 308, 169 So. 417, cert. den. and appeal dismissed 299 U.S. 512, 57 S.Ct. 49, 81 L.Ed. 378; State v. Gunter, 208 La. 694, 23 So.2d 305.

rel. Barksdale v. Dees, 252 La. 434, 211 So. 2d 318.

■ The next six grounds urged in the motion to quash allege that it was error for the grand jury to base its indictment upon an illegal confession. There is no merit in this contention since it cannot be determined whether a confession was in fact submitted to the grand jury or had any effect upon their determination.

■ The defendant raises objection to delay in trial in his motion to quash, but as determined by the district judge, this matter is foreign to the indictment. State v. White, 247 La. 19, 169 So.2d 894.

■ The defendant finally argues that he did not receive a certified copy of the indictment. He did in fact receive a copy of the indictment, which is all that is required. Former LSA-R.S. 15:332.1;[2] State v. Johnson, 141 La. 775, 75 So. 678.

The trial judge was correct in finding no merit in the motion to quash.

Bills of exception were reserved during the hearing into present insanity and on the trial of the issue of insanity at the time of the offense. We find two errors under these bills, either of which constitutes reversible error, but since the issues are so interrelated, we will discuss both.

Counsel for the defendant objected to the ruling of the court that the defendant was mentally competent to stand trial. At the preliminary hearing on present insanity four psychiatrists, the coroner, and a psychologist testified as expert witnesses. Drs. Texada and Freeman, psychiatrists, testified that after two examinations in February, 1963, in response to the first order for a lunacy commission they were unable to conclude whether the defendant was sane or insane because of his lack of cooperation, either deliberate or resulting from his inability to understand.

Dr. Weiss, a psychiatrist, a member of the second lunacy commission which had reported in May, and Dr. Kaufman, the coroner, were named to the third lunacy commission on October 11 to examine the defendant and testify at a hearing on October 17 concerning *his present state of sanity*. Dr. Weiss, however, never responded to the October 11 order to examine the defendant, and this failure effectively deprived the defendant of a lunacy commission composed of two doctors as required by former LSA-R.S. 15:267. The entirety of Dr. Weiss's testimony at the pre-trial hearing on present insanity relates to a one-hour examination conducted six months previously in response to his appointment to an earlier lunacy commission. His conclusions were that at the time of that examination the

---

**2.** Trial was had before the effective date of the new Louisiana Code of Criminal Procedure, and therefore the former revised statutes are applicable.

defendant was severely retarded mentally, but that he could assist counsel in the preparation of his case within his own limitations. Dr. Weiss's testimony cannot be given more than minimal consideration in regard to the mental condition of the defendant in October of 1963.

Dr. Kaufman, the coroner and a general practitioner, who had conducted two interviews with the defendant before the hearing, concluded that the defendant was able to stand trial. The coroner admitted that during the interviews the defendant made many contradictory statements, and that he accepted some of the defendant's explanations and rejected others. He gave no logical explanation of why or how he made these determinations, but apparently he rejected those statements which appeared to him to be "fantastic" and accepted those which coincided with his own view of the truth. He finally determined that the defendant was capable of communicating with counsel and assisting in his defense within his own limitations, and that he could therefore stand trial.

Dr. Trice, a psychiatrist, and Dr. Butler, a psychologist, worked together in performing a psychiatric examination and a psychological evaluation of more than six hours' duration. Dr. Trice testified that a physical examination revealed a lesion of the central nervous system, and that the defendant had "actual brain damage; actual damage to the brain tissue, itself". He was the only psychiatrist to examine the defendant within six months of the hearing and the only doctor to perform a physical examination of the defendant. His findings from this examination are not contradicted. Relying upon a psychological evaluation and the reflected score of 57 on the Wechsler Adult Intelligence Test, Dr. Trice diagnosed the defendant as a low-grade moron and placed his mental age in the seven-to-ten-year-old range. He found that the defendant had psychotic episodes and auditory hallucinations, and was paranoid. Lay witnesses including a cellmate corroborated the testimony that the defendant had hallucinations and talked to imaginary beings. Dr. Trice found the defendant indifferent during the examination and capable of only short-span periods of attention. He commented from the witness stand that the defendant appeared to be asleep during much of the court proceedings and totally indifferent to his situation.

Dr. Trice testified that the defendant did not understand death or the true consequences of the trial and "doesn't understand the gravity of the situation". In response to examination by defense counsel he stated: "As far as the crime is concerned, giving details of the crime, now, to you, he will be able to assist you probably not at all * * *. And he probably doesn't know really what happened at that time. * * * he doesn't really know what went

on during that period of time; and it's confused in his mind now." Dr. Trice emphasized that the defendant could not take the stand in his own behalf because he would become confused and would be unable to relate with any degree of verity any occurrences concerning the crime. Dr. Butler confirmed Dr. Trice's opinion and testified in relation to the psychological evaluation he had conducted.

▆▆▆▆▆ Mere weakness of mentality or subnormal intelligence does not of itself constitute legal insanity. State v. Chinn, 229 La. 984, 87 So.2d 315; State v. Brodes, 160 La. 340, 107 So. 131. The test for determining the present insanity of an accused is whether he is insane or mentally defective to the extent that he " * * * is unable to understand the proceedings against him or to assist in his defense * * *". Former LSA–R.S. 15:267.

" * * * And to warrant the sustaining of a plea of present insanity, thereby preventing trial of a criminal action, it must appear by a preponderance of evidence that the accused is so mentally deficient that he lacks capacity to understand the nature and object of the proceedings against him and to assist in the conducting of his defense in a *rational* manner." State v. Chinn, supra. (Emphasis added.)

"The test of present insanity which will prevent a trial in a criminal action

is whether the person is mentally competent to make a rational defense. And the question is whether the accused was sane enough *to present to counsel the facts which ought to be stated and presented to the jury upon his trial. * * *"* 1 Wharton & Stillé, Medical Jurisprudence, sec. 206, p. 210 (5th ed. 1905). (Emphasis added.)

This language of Wharton and Stillé was quoted with approval in State v. Genna, 163 La. 701, 112 So. 655, and again in State v. Swails, 223 La. 751, 66 So.2d 796. In State v. Yaun, 237 La. 186, 110 So.2d 573, we said:

" 'This court is in agreement with the foregoing pronouncements in the Swails case, supra, and a person accused of crime is not sane in legal contemplation unless he is able to understand the nature of the proceedings against him and assist in his defense in a rational manner and to a rational degree. Possession of any degree of ability to understand and assist less than rational would subject an accused to a disadvantage of such magnitude as to deprive him of his rights and liberty without due process of law.' "

▆▆▆▆▆ A conclusion that one is mentally retarded or defective or diseased does not of itself establish present insanity. However, when mental retardation or defect or disease, alone or in combination, is so severe that a defendant is unable to

understand the object, nature, and consequences of the proceedings against him, to communicate with counsel in a meaningful manner, to recall and relate the circumstances connected with the offense, to testify in his own behalf, and to assist reasonably and rationally in a defense of the charge against him, that defendant is, within the contemplation of our law, presently insane and unable to stand trial.[3]

 This defendant's mental condition deprived him of the ability to disclose to counsel, or to testify concerning, the pertinent circumstances, possible defenses, and events in his life which should have been peculiarly within his knowledge. This defendant did not possess the requisite rational understanding of the nature and consequence of the proceedings against him. It would do violence to our concept of due process and our sense of justice to force to trial one so mentally defective.

We will reverse on the above specification of error, but we also find merit in, and will pass upon, the correlated and cognate Bills of Exception Nos. 28 and 29.

These bills were reserved to a ruling permitting the jury to hear, on the issue of insanity at the time of the commission of the crime, the prerecorded testimony of an absent witness. This witness, Dr. Weiss, who had testified at a preliminary hearing on present insanity, failed to appear at the trial in response to personal service of a subpoena. The court's finding that Dr. Weiss was an unwilling witness and unavailable was the basis of its ruling that the State might introduce his testimony taken at the preliminary hearing. The defendant urges several objections to the admission of the recorded testimony, including the objection that it violated his right to confrontation of the witness guaranteed by Article 1, Section 9, of the Louisiana Constitution.

 Where one is permanently absent from the state or is dead, his testimony taken on preliminary examination which afforded an opportunity for cross-examination may be offered in evidence on the trial. This rule has been extended to situations where the witness has been diligently sought but cannot be found and where the witness was subpoenaed but fell sick on the way. State v. Harvey, 28 La.Ann. 105; State v. Wheat, 111 La. 860, 35 So. 955; State v. Britton, 131 La. 877, 60 So. 379; State v. Scarbrough, 167 La. 484, 119 So. 523. The witness in this case, however, does not come within any

---

**3.** The medical experts in this case inadvertently invaded the province of the court when they testified that the defendant met the legal standard for present sanity. It is the experts' obligation to present factual evidence and medical opinion to which a court may apply the legal yardstick for sanity, and the court may not delegate to them its responsibility.

of the categories of absent witnesses, as previously defined by our jurisprudence, whose prior testimony may be used upon the trial. This witness was absent without good cause and only temporarily, the State had not exercised diligence to obtain his presence, and no continuance was requested by the State.

Additionally, the proffered testimony was elicited at a hearing limited to an issue distinct from that presented at trial, and the defendant was thus deprived of his right to confrontation and cross-examination of the witness on a material issue presented to the jury. The preliminary hearing was restricted to an inquiry into present insanity, but the testimony was offered to the jury upon the issue of insanity at the time of the commission of the offense.[4]

It has been held, and it must be recognized, that evidence taken in a preliminary proceeding upon a limited issue different or foreign to the one presented on the trial of the case cannot be admitted at the trial because its admission would infringe upon the defendant's constitutional right to confront the witness. 2 Wharton's Criminal Evidence, secs. 471, 484, pp. 269, 284 (Anderson's 12th ed.); 23 C.J.S.

4. There was no lunacy commission as contemplated under former LSA–R.S. 15:268. Dr. Weiss also failed to respond to the order appointing him to the fourth lunacy commission to examine the

Criminal Law § 1003, p. 1063. The submission of this evidence to the jury was prejudicial and is reversible error.

For the reasons assigned the conviction and sentence of the defendant are annulled and set aside, and the matter is remanded for proceedings not inconsistent with the law and the views herein expressed.

FOURNET, C. J., concurs.

defendant as to insanity at the time of the crime. His offered testimony was that he could not give an opinion in this regard.