282 So.2d 456 (1973)
STATE of Louisiana
v.
Gerald DICKERSON.
No. 53122.
Supreme Court of Louisiana.
August 20, 1973.
Rehearing Denied September 24, 1973.
Roccaforte & Rousselle, Leo W. Rousselle, New Orleans for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
*457 BARHAM, Justice.
Defendant Dickerson was convicted after a trial by jury of possession of heroin, a violation of LSA-R.S. 40:971, and was sentenced to five years' imprisonment. Five bills of exceptions reserved to rulings of the trial court are the bases for the instant appeal. We find merit in the bill of exceptions taken to the trial court's denial of defendant's motion for a new trial, and reverse.
Prior to the commencement of the trial, defense counsel discovered that one of the defense witnesses subpoenaed, one Albert Hunter, was not present in or around the courtroom. Hunter was present with defendant in defendant's car at the time the police officers discovered heroin near the car and was arrested with Dickerson. Testimony adduced at the motion to suppress the heroin held prior to trial indicated that Hunter would corroborate the defendant's position that certain details of the officers' account of the incidents leading to the discovery of the heroin and the arrest of the two men were incorrect.[*] For this reason, the defense took the position that Hunter's testimony was material to the defense's case and orally moved for a continuance of the trial on that basis. The trial court denied the oral motion for a continuance but issued an instanter subpoena for Hunter. After the state had rested its case, and at the conclusion of testimony given by the first witness for the defense, the defense counsel inquired as to the status of the instanter subpoena issued for Hunter and was informed that Hunter could not be located. Defense counsel then requested that a tape of the testimony given by Hunter at the motion to suppress be played for the benefit of the jury. This request was denied, and counsel reserved a bill to the court's denial. The defendant then testified in his own behalf and the defense rested. In due course, the jury returned a verdict, finding Dickerson guilty as charged.
Subsequent to the jury verdict of guilty, the defense filed a motion for a new trial and a hearing was held on the motion. Albert Hunter was present at the hearing and was permitted to testify by the trial court. Hunter testified that he did not appear at the defendant's trial because he was in Central Lockup, booked on a narcotics charge under the alias of Albert Fletcher, on the date of the trial. He further *458 testified that when arrested he had informed the arresting officer, who knew him as Fletcher, that his name was Hunter and that he had on his person a birth certificate and a draft card identifying him as Hunter. Nevertheless, he was booked under the name of Fletcher and was held in Central Lockup. Hunter testified that the charges under which he was then held were refused by the District Attorney's office because ".... it was a clean cooker." Hunter testified, in response to questions by the Assistant District Attorney asked on cross-examination, that he did not inform anyone that he had to be in court to testify on the day of defendant's trial and that he had no access to a telephone to get in touch with a lawyer, or with defendant or defendant's counsel.
The defense had alleged, in its motion for a new trial, that it had discovered subsequent to trial that Hunter was an informer for the New Orleans Police Department in regard to an armed robbery in which the police were previously notified, but that Hunter was not arrested in said robbery and fled the scene. Though no testimony was introduced at the hearing on the motion for a new trial regarding this allegation, the state did argue that this information was not relevant or material. After hearing Hunter's testimony and the arguments of counsel, the court denied the motion for a new trial.
We hold that the trial court's denial of defendant's motion for a new trial was, under the particular circumstances presented here, reversible error. Hunter, as previously noted, was an admitted heroin addict. He was the only independent witness to the offense charged, and his testimony at the motion to suppress, like Dickerson's, differed materially in important details from that given by the arresting officers. Hunter was duly subpoenaed to appear as a witness for the defense at the trial. When he did not appear, the defendant moved orally for a continuance, which was denied. Later, when the instanter subpoena issued by the court failed to produce the witness, the defense attempted to have Hunter's testimony, which had been given and recorded at the motion to suppress, reproduced for the jury's benefit. This request was also refused and defense counsel objected. After the jury verdict, it was discovered that Hunter was in jail on the trial date, booked under an alias, even though he had given his correct name to the officer who arrested him. Defense counsel alleges in his brief to this court that he went to Central Lockup personally at the time of the trial to try to find the witness Hunter. Of course, no one by the name of Albert Hunter was booked there.
At the time that the defendant's oral motion for a continuance and his request that Hunter's prior testimony be presented to the jury were denied, neither the trial court nor the defense attorney knew that Hunter was in jail under another name. But we are of the opinion that when this fact was called to the trial court's attention at the hearing on the motion for a new trial in proper pleadings, and allegations were made regarding Hunter's status as a police informer, the trial court improperly denied the defendant's motion for a new trial. In its per curiam to the bill of exceptions reserved to its denial of the motion for a new trial, the trial court notes that the newly discovered evidence that the witness Hunter had been an informer for the New Orleans Police Department in regard to an armed robbery was not material to the case and would probably not have changed the verdict, since the defendant was convicted upon the testimony of one of the arresting officers who was an eyewitness to defendant's action of dropping the heroin to the ground. If this were the only new evidence presented upon the hearing of the motion for new trial, we would certainly agree with the trial court's conclusion. However, we believe that this bit of new evidence, coupled with the new information that Hunter had been in Central Lockup under an alias at the time his testimony was needed for defendant's trial and was unavailable for reasons beyond *459 the defendant's control, should require and does require that defendant be granted a new trial and be allowed to present for jury consideration Hunter's corroborative version of the facts which led to the officers' discovery of the heroin and the subseqent arrest of Dickerson and Hunter.
The rulings on the defendant's other bills of exceptions, in isolation and at the time made, would not present reversible error. The motion for continuance which certainly appears to have merit was not presented in proper form since it was made orally and without the required specificity. Further, the trial court tried to cure any need for continuance with the instanter subpoena.
In the per curiam to the bill of exceptions to the trial court ruling that the testimony of the witness on the motion to suppress could not be used at the trial, the trial court stated:
"The testimony of the witness from the hearing on the motion to suppress was inadmissible at the trial because at that hearing, the district attorney's cross-examination was limited to the issue before the Court, i. e., the admissibility of the evidence seized. The district attorney's cross-examination at trial would not have been so limited."
Alone, the ruling on this bill would not necessarily constitute reversible error as an abuse of the trial court's discretion. State v. Augustine, 252 La. 983, 215 So.2d 634 (1968). However, when all of these matters are accumulated and considered in light of the motion for new trial, the earlier rulings together with the denial of the motion for new trial, constitute a denial of due process and a deprivation of a fair trial for the defendant. Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L. Ed.2d 297 (1973).
The judgment of conviction and sentence is reversed and the case is remanded for a new trial.
SANDERS, C. J., dissents with written reasons.
SUMMERS, J., dissents for the reasons assigned by the Chief Justice.
MARCUS, J., dissents.
SANDERS, Chief Justice (dissenting).
The defendant, Gerald Dickerson, was convicted of the possession of heroin, a controlled dangerous substance, and sentenced to five years in the Louisiana State Penitentiary. (LSA-R.S. 40:971). On this appeal, the defendant relies upon five complaints based on bills of exceptions. The majority reverses the conviction. I disagree.
The first complaint is that the trial judge erred in overruling the motion to suppress the heroin for use at the trial.
Police officers stopped defendant's automobile to issue him a citation for having a loud muffler. As they approached his automobile, they observed him drop an object to the ground beside the automobile. The object proved to be a quantity of heroin. The officers picked up the heroin from the place where it had fallen.
The Fourth Amendment of the United States Constitution, as well as Article 1, Section 7 of the Louisiana Constitution, prohibit unreasonable searches and seizures. Two constitutional principles, however, converge here to defeat defendant's contention that the heroin was secured in an unreasonable search and seizure.
The first of these principles is that police officers may seize contraband in plain view when they are at a place where they have a right to be. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), rehearing den. 404 U. S. 873, 92 S.Ct. 26, 30 L.Ed.2d 120; Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).
The second principle, equally valid, is that the police may retrieve abandoned *460 property without violating the constitutional guaranty against unreasonable searches and seizures. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); State v. Winesberry, 256 La. 523, 237 So. 2d 364 (1970).
Under the circumstances disclosed in this case, the officers violated no constitutional rights of the defendant in taking possession of the heroin.
The second complaint is the denial of a continuance.
On the day of the present trial, defense counsel orally moved for a continuance, stating "Albert Hunter is not here and he is a material witness in the case." The trial judge denied the motion, but ordered that an instanter summons issue.
The ruling was correct. The motion was insufficient for several reasons. It was not in writing, failed to specify the expected testimony, failed to indicate that the witness would be available at a later date, and failed to show due diligence in obtaining the attendance of the witness. LSA-C.Cr.P. arts. 707, 709. Moreover, the trial judge had previously granted the defense a continuance to the day on which the trial was fixed.
The next bill was taken to the refusal of the trial judge to order a lie detector test for the State and defense witnesses.
Recently, in State v. Refuge, 264 La. 135, 270 So.2d 842 (1972), this Court held that the result of lie detector tests of witnesses was inadmissible in evidence. There, after reviewing the authorities, we held:
"Although there is no Louisiana decision in point, the universal rule in American jurisdictions is that (at least in the absence of stipulation) the results of a lie detector test are inadmissible when offered by either party, either as substantive evidence or as relating to the credibility of a party or a witness. The essential reason is the lack of probative value and insufficient scientific reliability, as well as the possible unduly prejudicial effect upon lay triers of fact."
This holding requires that defendant's contention be rejected.
Defendant took the fourth bill of exceptions when the trial judge refused to admit in evidence at the trial the testimony of the absent witness, Albert Hunter, taken at the hearing on the motion to suppress.
In his Per Curiam, the trial judge states:
"The testimony of the witness from the hearing on the motion to suppress was inadmissible at the trial because at that hearing, the district attorney's cross-examination was limited to the issue before the Court, i. e., the admissiblity of the evidence seized. The district attorney's cross-examination at trial would not have been so limited."
The ruling of the trial judge was correct. Article 295 of the Louisiana Code of Criminal Procedure allows the use, at the trial, of the testimony of a witness taken at a preliminary hearing under special circumstances. That article, however, has no application to testimony of a witness on a motion to suppress, where the issue is limited to the suppression of tangible evidence.
The final bill of exceptions was reserved to the overruling of the motion for a new trial. In addition to the complaints previously discussed, the motion for a new trial alleged:
"Subsequent to the trial defense counsel learned that the witness Albert Hunter, was an informer for the New Orleans Police Department in regard to an armed robbery in which the police were previously notified. Albert Hunter was not arrested in said robbery and fled the scene. In the instant case Albert Hunter is an admitted addict and has never been arrested for possession of heroin even after his testimony or the motion to suppress when he admitted he was an addict. This information was not available *461 to the defendant or his counsel prior to the trial and said information could not have been ascertained through a diligent search by the defendant and his counsel."
In his Per Curiam, the trial judge states:
"The defense also based its Motion for a New Trial on newly discovered evidence; that evidence being that the missing witness had previously been an informer for the New Orleans Police Department in regard to an armed robbery in which the police were previously notified.
"This newly discovered evidence was not material to this case and had it been introduced at the trial it probably would not have changed the verdict of guilty, since the testimony of one of the arresting officers made it clear that he was an eye witness to the actions of the defendant when he dropped the contraband to the ground."
Article 851 of the Louisiana Code of Criminal Procedure provides in part:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
"The court, on motion of the defendant, shall grant a new trial whenever:
"(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;"
Motions for new trials based on newly discovered evidence should be received with caution. State v. Jackson, 253 La. 205, 217 So.2d 372 (1968). To satisfy the requirement for a new trial, not only must the evidence be material, but it must be of such import that it would probably have changed the verdict. State v. Cancler, 252
La. 380, 211 So.2d 298 (1968); State v. Miller, 254 La. 73, 222 So.2d 862 (1969), cert. den. 396 U.S. 1021, 90 S.Ct. 592, 24 L.Ed.2d 513. (1970).
On the motion for a new trial, the trial judge allowed the defense to present evidence, including the testimony of Albert Hunter. Hunter admitted he was a narcotic addict and had a lengthy criminal record for burglary and theft. No evidence was offered to show that he was a police informant, as alleged in the motion for new trial.
As correctly noted by the trial judge, the new evidence (even if it had existed) had little or no probative value in the present case. The trial judge concluded that there was little likelihood that it would change the verdict, since the conviction was based on eye-witness testimony. His conclusion concerning the effect of the evidence is entitled to great weight.
Based on my analysis, I would affirm the conviction.
For the reasons assigned, I respectfully dissent.
NOTES
[*] The officers testified that they followed defendant's car, with their blue lights flashing, in order to issue a citation for illegal exhausts and that they pulled behind defendant's vehicle when it parked on the right side of S. Liberty Street, but parked closer to the curb than defendant had. They further testified that they exited their police vehicle before the defendant and Hunter left their car, and Officer Pacaecio testified that he saw the defendant drop a whitish object from his left hand as he was exiting from the driver's side. The officer acknowledged that it was dark at the time he approached defendant's car, but insisted that he could see adequately because his police vehicle, with headlights on, was parked closer to the curb than defendant's car, and the headlights shone down the side of defendant's car and adequately illuminated defendant's exit. Both officers testified that Dickerson exited from the driver's side of the vehicle and Hunter exited from the passenger side.

On the other hand, Hunter, an admitted heroin addict, and the defendant, testified that the police vehicle was parked on the street, alongside their car, and not behind it. They estimated that the police vehicle's front door was even with their back door. Dickerson and Hunter both testified that Hunter exited from the driver's side, like Dickerson, and not from the passenger side. Dickerson stated that the passenger door was stuck. Both men testified that the heroin was found in a handkerchief on the ground. The police, even when asked about the presence of a handkerchief, stated that the heroin was found in a clear cellophane container, and that there was no handkerchief. Both men testified that the officer who was looking around the car used a flashlight to look inside the car and around on the ground. The police officer who recovered the heroin stated that he did not have a flashlight on his person, and that he could see the heroin dropped to the ground because his headlights were illuminating the area.