DOMENGEAUX, Judge.
Defendant, Wilfred James Freeman, was charged by grand jury indictment with second degree murder, in violation of La.R.S. 14:30.1. On the defendant’s motion, a sanity hearing was ordered to determine whether the defendant was competent to stand trial. The court ruled that the defendant had the mental capacity to understand the proceedings against him and to assist in his defense. The twelve person jury ultimately found the defendant guilty *1079 as charged. He was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.
The defendant filed a motion to appeal his conviction and sentence, urging six assignments of error.[1] However, the defendant has briefed only Assignments of Error 1 and 3. Assignments of error which are not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982). Therefore, we will consider only the issue of whether the defendant was correctly adjudged competent to stand trial.
“Due process and our statutory law require that the issue of the defendant’s mental capacity to proceed shall be determined by the court. La.C.Cr.P. arts. 647, 648. This cardinal principle permits the court to receive the aid of expert medical testimony ...” State v. Rogers, 419 So.2d 840 (La.1982). “Moreover, the judge’s determination of a defendant’s present mental capacity is entitled to great weight and his ruling will be reversed only if it is clearly erroneous.” (Citations omitted.) State v. Bennett, 345 So.2d 1129 (La.1977).
“A conclusion that one is mentally retarded or defective or diseased does not of itself establish present insanity.” State v. Augustine, 252 La. 983, 215 So.2d 634 (1968).
“Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused’s ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.”
State v. Bennett, supra.
In this case the defendant’s expert witness concluded that the defendant was not capable of standing trial. The State’s expert witness disagreed. Based in part upon the following examination of Doctor Byrd, the court held that the defendant was mentally competent to proceed.
“BY THE COURT:
Q. Doctor, does the defendant have the mental capacity to understand the proceedings against him?
A. Yes, sir.
Q. To assist counsel in his defense, specifically concerning the charge *1080 against him now which are [sic] homicide?
A. Yes, sir.
Q. Although he may be unable to accurately relate all of the facts and circumstances of the alleged crime or at the time of the alleged crime, is he in fact able to recall and relate some of the facts relative to that crime?
A. Yes, I’m of the opinion he has that capacity.
Q. Is he able to maintain a consistent defense?
A. Yes, sir, I think he can.
Q. Is he able to listen to testimony of the witnesses and to inform counsel of any distortion or misstatement, if some should be made? Can he do that?
A. Yes, sir.
Q. Can he make simple decisions in response to well explained alternatives?
A. Yes, sir.
Q. Should he testify in his own defense if he chooses to? Is he capable of doing that?
A. Is he capable of doing that?
Q. Yes.
A. Yes, sir.
Q. His mental condition as you find him, is it your opinion that it is apt to deteriorate under the stress of the trial?
A. He may become tense, anxious or depressed but I don’t believe his logic would deteriorate.”
The above-recited responses by Doctor Byrd provide a reasonable factual basis for the trial court’s conclusion. Even the defendant’s expert conceded that the defendant was mentally capable of contending with the various aspects of the prosecution and its defense, although he questioned the defendant’s ability to adequately recall the facts and circumstances relating to the murder. Inasmuch as two physicians could not agree on whether the defendant could “adequately relate the events of the night of the murder, we do not presume to second guess the trial judge who had the benefit of questioning the doctors and observing the defendant face-to-face. The trial court’s ruling that the defendant was mentally competent to stand trial is not clearly erroneous. Therefore, the assignments alleging error in the trial court’s ruling on the sanity hearing and motion for new trial are without merit.
For the above and foregoing reasons the conviction and sentence of the defendant are affirmed.
AFFIRMED.

.The defendant-appellant originally assigned six errors, as follows:
"1. It was error for the trial court to rule that defendant was competent to stand trial.
2. It was error for the trial court to deny the Motion for Suppress the statement of defendant and allow his statement to be used against the defendant at trial, [sic]
3. It was error for the trial court to deny the Motion for New Trial filed on behalf of defendant.
4. It was error for the trial court to allow Huey Bryant, after he had been sworn as a witness, to review a statement he had given to police during the investigation of the alleged crime, and in refusing to order the State to provide the defendant with a copy of the statement after the witness had used in [sic] to refresh his memory.
5. It was error for the prosecutor to comment as he did in his closing arguments) concerning the shooting of President Reagan.
6. The verdict returned was contrary to the law and the evidence.”