| iKLEES, Judge.
On February 12,1993 the defendant-appellant, Willie Dixon, was charged with one count of attempted armed robbery, a violation of La.R.S. 14:27(64). He was arraigned and entered a not guilty plea on April 23, 1993. A lunacy hearing was conducted on July 20, 1993 at which time the defendant was adjudged competent to proceed. The defense later moved for additional testimony on the issue of the defendant’s competency; hearings were held on September 28, 1993, October 12, 1993, and February 1, 1994. On the last date, the trial court adjudged him competent to proceed. The defense gave notice of intent to file writs but did not do so. Trial was held on March 2, 1994. At the conclusion, the twelve-person jury found the defendant guilty as charged. On April 7, 1994 the State filed a multiple bill of information charging the defendant as a second offender. On April 25,1994 the defendant pled guilty to that allegation and, after waiving all delays, was sentenced to serve twenty-four and one-half years at hard labor without the benefit of probation, parole, or suspension of sentence. The defendant was also advised of the time limits under La.C.Cr.P. art. 930.8. The defendant’s motion to reconsider sentence, filed on April 26,1994, was denied; his motion for appeal was granted. The record was lodged on February 1,1995.

FACTS

The State presented two witnesses at trial. The victim, Robert Austin, testified that he was the owner of a convenience store, Austin’s One Stop. Mr. Austin was working *390 alone in the store on January 19, 1993 at approximately 3:30 a.m. when he noticed the defendant sitting outside on the curb. The defendant entered the store, walked up to the counter, and demanded money, threatening to 12lull Mr. Austin if he did not comply. The victim told the defendant to leave at which time the defendant reached into his jacket. The victim had a gun on the counter, concealed in a paper bag. When he saw the defendant reaching into his jacket, the victim shot the defendant. An object flew out of the defendant’s coat; it was a crowbar. Mr. Austin then called 911.
Officer Corey Kenny testified that he answered a call from Austin’s One Stop on January 19, 1993. When he arrived he observed the defendant on the ground, blocking the doorway, and Mr. Austin behind the counter. Officer Kenny described the victim as “stunned”. The defendant had a gunshot wound; a crowbar covered with a black sheath was next to him. The victim told Officer Kenny that the defendant had walked in, demanded money, then reached into his waistband, at which time the victim shot him. Officer Austin called homicide detectives because it appeared that the defendant would not survive his wounds.
The sole defense witness was Hazel Davis, the defendant’s mother. She testified that the defendant was left-handed; Mr. Austin had testified that the defendant had reached into his jacket with his right hand. Ms. Davis also testified that the defendant lived with her, that she was familiar with the contents of his room, and that she had never seen the crowbar.

ERRORS PATENT

A review of the record for errors patent reveals none.
The appellant assigns only one error. He contends that the trial court committed error when it determined that he was competent to proceed to trial. The appellant states that, because of the gunshot wound he sustained, he is suffering from neurological based amnesia. Because of this amnesia, he was unable to recall any of the events surrounding the incident. Without such recollection, the appellant argues, he was unable to assist in his defense. The appellant also argues that the trial court should have allowed him to present expert 13testimony from Dr. Franklin at trial. The appellant argues that because the defendant did not testify, Dr. Franklin’s testimony regarding amnesia would explain why the defendant did not give his version of events. The appellant suggests that if the defendant had been able to give a version of events, the case would have been no more than a credibility or swearing contest. The defendant raised the issue of competency, of allowing Dr. Franklin’s testimony, and of giving a jury instruction via a motion in limine.
As to the appellant’s contention that he should have been allowed to introduce testimony from Dr. Franklin regarding his amnesia, as well as receive a special jury instruction, the Louisiana Supreme Court held in State v. Roussel, 424 So.2d 226, 229-230 (La.1982), overruled on other grounds by State v. Jackson, 480 So.2d 263 (La.1985) that no such testimony or instruction is proper:
In State v. James, 241 La. 233, 128 So.2d 21 (1961), we stated that “[tjhere can be no question that amnesia is a mental defect.” In James, defendant testified that he had a loss of memory (amnesia) during the commission of the murder for which he was charged. Subsequently, the trial judge sustained the state’s objection to the testimony of a psychiatrist relative to “mental defect, mental condition, or loss of memory” of the accused. In affirming the ruling of the trial court, we held that in the absence of a special plea of insanity, evidence of a mental defect at the time of the crime was not admissible. In State v. Lecompte, 371 So.2d 239 (La.1978), we held that under art. 651, evidence of a mental condition or defect is inadmissible when the defendant failed to plead not guilty and not guilty by reason of insanity ...
In the instant case, we consider that the trial judge correctly refused to allow expert testimony relative to defendant’s amnesia. La.Code Crim.P. art. 651 clearly provides that when a defendant is tried upon a plea of “not guilty,” as here, evidence of insanity or mental defect at the *391 time of the offense shall not be admissible. As previously noted, we have held that evidence of amnesia is a mental defect. James, supra. However, art. 651 deals with a mental defect “at the time of the offense.” Therefore, the question remains whether defendant’s mental defect (amnesia) occurred at the time of the offense. Defendant recalled in detail the events | immediately before and after the shooting. The only thing he did not recall was the shooting itself. Moreover, he could not remember the shooting immediately after it occurred when questioned by the arresting officer. Therefore, it is reasonable to infer from these facts that defendant’s amnesia as to the shooting began at the time of the offense. Although defendant argues that psychiatric testimony was intended solely to corroborate the credibility of his testimony as to his inability to remember the moment of shooting, we consider that the admission of such evidence would be accepted either as a complete defense or for the purpose of negating specific intent and reducing the degree of the crime despite a limiting instruction to the contrary. In sum, we consider defendant’s amnesia to be a mental defect that existed at the time of the offense and evidence thereof was properly excluded in the absence of an insanity plea. Hence, the trial judge correctly refused to allow expert testimony relative to defendant’s amnesia.
In light of this jurisprudence, the trial court correctly held that testimony from Dr. Franklin and/or an explanatory jury instruction on the defendant’s condition would be improper. The remaining question is whether the trial court was incorrect when it ruled that the defendant was competent to proceed to trial.
La.C.Cr.P. art. 641 provides that mental incapacity to proceed exists when, as a result of a mental disease or defect, a defendant lacks the capacity to understand the proceedings against him or to assist in his defense. In State v. Swails, 223 La. 751, 762-63, 66 So.2d 796, 799-800 (1953), the Louisiana Supreme Court stated in dicta that amnesia may render a defendant incapable of assisting in his defense:
[TJheir principal contention on this appeal is that the trial judge erred in concluding that appellant was able to assist in his defense, in view of the report of the lunacy commission in which it is stated that ‘Mr. Swails claims that at present he recalls practically nothing for a period extending for a year or more before the time of the commission of the alleged crime until after he had been committed to the hospital for about two months, and that all that he knows about any such crime is what his wife has told him and what he later read in the papers, and with this statement we agree’. It is argued by the district attorney that it is not enough that appellant is able to | ..¡confer with his counsel intelligently; that, in order to be able to assist them in his defense, he must have such possession and control of his mental powers, including the faculty of memory, as will enable him to testify and inform his counsel of material facts bearing upon the criminal acts charged against him, which he cannot do in this ease as he remembers nothing.
This contention would be very forceful and persuasive were this a prosecution in which the accused was pleading not guilty for, in such case, his inability to inform his counsel of any of the facts regarding his own movements in relation to the charges against him would materially affect him in his defense. But, here, appellant is pleading insanity at the time of the commission of the crimes — a special defense under our law. LSA-R.S. 14:14 and 15:261. His alleged amnesia as to the events occurring, at, before and after the crimes were committed is not a factor which hampers his defense. On the contrary, the very fact that appellant does not remember anything concerning his alleged criminal acts may be of material aid to his counsel in their presentation of a case of insanity and his testimony, if he sees fit to take the stand, may have considerable weight with the jury.
A defendant’s inability to remember the time period surrounding the alleged offense does not, per se, render him incompetent to proceed. La.C.Cr.P. art. 645(A)(2).
*392 In State v. Bennett, 345 So.2d 1129, 1138 (La.1977), the Court set forth factors which the trial court must take into consideration when determining whether a defendant is competent to proceed:
Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused’s ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; frwhether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial. See, State v. Augustine, [252 La. 983, 215 So.2d 634 (1968) ] supra; Robey, Criteria for Competency to Stand Trial: A Checklist for Psychiatrists, 122 Am.J. of Psychiatry, at 616; Note, 6 Loyola Univ.L.J. at 684-85; Note, 4 Columb.Hum.Rights L.Rev. at 245.
The burden of establishing incompetency is on the defendant, and the trial court’s decision is entitled to great weight. State v. Flores, 315 So.2d 772 (La.1975).
In the instant case, there was ample evidence that the defendant was suffering from amnesia caused by the gunshot wound suffered in the incident and that he would never be able to recall the events surrounding the incident. Dr. Franklin not only examined the defendant, but he also reviewed a current CAT scan and EE6, and the defendant’s medical records from Charity Hospital. After hearing this unequivocal medical testimony, the trial court posed the issue as follows: “So the question becomes can a man or a woman suffering from amnesia ever be tried for a case or any criminal trial setting if the amnesia in some way affects their ability to assist counsel.” The trial court did not answer its own question at the October 12, 1993 hearing; instead the court ordered that the defendant be remanded for further testing and treatment. The court did so to insure that, no matter what its ruling, the record would be complete.
The final competency hearing was held on February 1, 1994. At that time, Dr. Franklin reiterated his findings that the defendant suffered from amnesia with regard to the incident and surrounding circumstances. Without further clarification, however, Dr. Franklin testified that, taking into consideration the physical trauma suffered by the defendant, “it would appear that a strict application of the Bennett criteria would hold that this man is indeed competent to proceed to 17⅛⅛1”. Apparently, based upon this testimony, the trial court found the defendant competent.[1]
A strict application of the Bennett factors may not be sufficient in a case such as this. There appears to be no question but that the defendant has no memory of the incident. A similar situation occurred in Wilson v. U.S., 391 F.2d 460 (D.C.Cir.1968). The defendant in Wilson was severely injured in a car accident following a high speed chase immediately after the robberies with which he was charged. The purported co-perpetrator was killed in the same accident. The defendant’s physical injuries caused amnesia regarding events preceding the alleged crimes and the weeks following. Apart from this amnesia and residual partial paralysis, the defendant had no mental or physical defects. His motion to be declared incompetent to stand trial *393 was denied. On appeal, the court remanded the case to the trial court for a hearing at which the trial court was directed to make additional findings on whether the defendant’s memory loss deprived him of a fair trial and the effective assistance of counsel. On remand, the trial court was instructed to consider the following factors:
(1) The extent to which the amnesia affected the defendant’s ability to consult with and assist his lawyer.
(2) The extent to which the amnesia affected the defendant’s ability to testify in his own behalf.
(3) The extent to which the evidence in suit could be extrinsically reconstructed in view of the defendant’s amnesia. Such evidence would include evidence relating to the crime itself as well as any reasonably possible alibi.
(4) The extent to which the Government assisted the defendant and his counsel in that reconstruction.
(5) The strength of the prosecution’s case. Most important there will be whether the Government’s ease is such as to negate all reasonable hypotheses of innocence. [Footnote omitted]. If there is any substantial possibility that the accused could, but for his amnesia, establish an alibi or other defense, it should be presumed that he would have been able to do so.
|⅝(6) Any other facts and circumstances which would indicate whether or not the defendant had a fair trial.
Wilson, 391 F.2d at 463. The first five factors were applied in U.S. v. Rinchack, 820 F.2d 1557, 1569 (11th Cir.1987). In Rinchack, the defendant suffered a head injury three years after the alleged crime; the prosecution for drug distribution had not yet been instituted at the time of the injury however. In concluding that the defendant had not been denied a fair trial, the court considered that two of the defendant’s co-perpetrators had been tried already (although acquitted), enabling the defendant to reconstruct the alleged crime, that another witness testified on the defendant’s behalf explaining, in an exculpatory manner, his presence during the crime and his arrest, and the evidence against the defendant was overwhelming. Notably, the court in Rin-chack also found that there was no indication that the amnesia was “locking in” exculpatory information:
There is no prolonged period of time around the time of the crime where Rin-chack was alone and his whereabouts and activities are entirely unexplained, nor is there any suggestion that Rinchack’s link to the other defendants or the incriminating circumstantial evidence in this case has an innocent explanation.
Rinchack, 820 F.2d at 1570.
The Wilson factors were also cited in U.S. v. Swanson, 572 F.2d 523 (5th Cir.1978), cert. denied 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978), wherein the defendant’s amnesia was diagnosed as “hysterical”. The Swanson court first declined to hold that amnesia per se constitutes incompetency to stand trial. Then, prior to applying the factors listed in Wilson, the Swanson court stated that an important factor is whether a continuance is likely to do any good. “If the amnesiac condition is unlikely to abate, the judge may question whether the defendant will ever be in any better position to stand trial ... [A] presently incompetent defendant whose amnesia seems permanent would not benefit from a continuance; moreover, because the continuance would delay the trial the recall of 19other witnesses would decrease, making it more difficult to give the amnesiac defendant a fair trial.” Swanson, 572 F.2d at 526-7. Ultimately, because the defendant had been able to testify, because it appeared that he may have been feigning, because the purported defense was insupportable whether or not the defendant had suffered selective memory loss, and because a continuance would not have further assisted him in preparing a defense, the court concluded that he was correctly judged competent to proceed. Id. at 527.
In contrast, in State v. Peabody, 611 A.2d 826 (R.I.1992), a case of first impression, the Rhode Island Supreme Court refused to adopt the Wilson factors. After reviewing jurisprudence from several other state jurisdictions, the court found that discovery provisions adequately protected the defendant’s *394 right to governmental assistance in reconstructing the crime. The court further found that the fifth and sixth Wilson factors were simply a restatement of the question of whether the State had proven its case beyond a reasonable doubt. The first factor was, in the court’s view, no more than the statutory definition of competency; the court then declined to extend the statutory definition to encompass “the ability to remember the circumstances out of which criminal charges arose.” Id. at 831. Finally, the court cited with approval the Arizona Supreme court’s holding that “limited amnesia does not totally incapacitate the defense and the defendant is free to assist counsel in numerous ways. We believe that a defendant is entitled to a fair trial, but not necessarily to a perfect trial.” Id. at 833, citing State v. McClendon, 103 Ariz. 105, 109, 437 P.2d 421, 425 (1968).
In the instant case, the appellant argues that because of his amnesia, he was totally unable to assist his counsel with information to present a defense. He suggests that evidence such as other witnesses is unknown to him. He further suggests that possible defenses, such as a misunderstanding or verbal altercation with Mr. Austin, resulting in Austin shooting him and then concocting the robbery |10story, are unavailable to him because of the total amnesia. While the defendant’s whereabouts at the time of the offense are known, his activities are known only through the testimony of Mr. Austin. There is no independent corroboration of his testimony, except for the presence of the crowbar. However, the defendant’s possession of this item may have an innocent explanation; it is precisely the defendant’s amnesia which would prevent defense counsel from determining this fact. On the other hand, a continuance would not have helped the defendant in preparing a defense as his memory loss is permanent. See Swanson. Furthermore, the defendant’s amnesia would not and did not stop the defendant’s counsel from cross-examining the victim.
What is unknown at this time, as was the case in Wilson, is whether counsel for the defendant was able to obtain evidence regarding any reasonably possible defense. In Wilson, the court suggested that on remand, if the defendant would waive his attorney-client privilege, a complete record on these issues could be developed. A similar hearing could occur in this ease in the context of post-conviction relief based upon a claim that counsel was rendered ineffective. Considering that the trial court’s ruling on competency is entitled to great weight, we affirm the defendant’s conviction and sentence.

AFFIRMED.

BARRY, J., dissents with reasons.

. The transcript does not reflect the trial court's ruling or reasons; the minute entry reflects the ruling.