454 So.2d 295 (1984)
STATE of Louisiana
v.
Albert WILLIAMS.
No. KA-1217.
Court of Appeal of Louisiana, Fourth Circuit.
July 3, 1984.
*297 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Joanne C. Marier, Asst. Dist. Atty., New Orleans, for appellee.
Before REDMANN, C.J., and GARRISON and BARRY, JJ.
BARRY, Judge.
Defendant Albert Williams appeals his conviction for attempted armed robbery and his 99 year sentence as a second felony offender. He assigns as error the trial court's refusal to grant a mistrial due to the state's allegedly misleading response to defendant's discovery request regarding his oral statement to the victim while in custody. Defendant contends his sentence is illegal because it was based on his decision to stand trial, rather than plead guilty, and argues the sentence is unconstitutionally excessive.
About 1:00 a.m. on Mardi Gras 1983 Charles Pugh, a sailor who had become separated from his friends by the crowds, met the defendant and two other men who invited Pugh to "party" with them. Pugh accompanied the three men out of the Quarter into a housing project where one of the men pulled a gun, pointed it in Pugh's face, and demanded money. Pugh attempted to escape and the defendant struck him in the head with the gun, knocking him to the ground. Defendant continued to bludgeon Pugh in the head with the gun until police arrived, whereupon defendant and his cohorts fled.
Three police officers arrived in their patrol car and observed the defendant hitting the victim with the gun. Each policeman chased one of the assailants but only the defendant was apprehended. Officer Deal, who caught the defendant after a six-block chase through the housing project, testified defendant had a gun in his hand when he fled the scene but did not have the gun when captured.
Meanwhile, Pugh got up and found his eyeglasses on the ground. After searching in vain for his watch and jacket (which contained $5), he left the area and was found 6 blocks away, his face covered with blood. Pugh apparently received first aid and was taken to the police station where he identified the defendant as his robber and assailant. Pugh asked the defendant why he robbed him and he replied that it wasn't his idea, that the other two men were responsible, and that he tried to stop them.
At trial the defendant admitted he and his friends encountered Pugh in the Quarter, but denied he hit or robbed Pugh. He testified that he, his friend Shorty, and another man Shorty knew were walking down Bourbon St. when they met Pugh. The men agreed to take Pugh to a party at Williams' girlfriend's house and Pugh asked to buy marijuana. The men said they had none and Pugh became enraged and threw wine in defendant's and Shorty's faces. A struggle ensued and Pugh ran away, leaving his jacket behind. Defendant testified he was arrested 10 or 15 minutes later while he was walking to his aunt's house "no where near the [Housing Project] office" and denied any chase by police through the housing project. Defendant similarly denied having a gun, robbing or striking Pugh, and saying anything to Pugh at the police station. He said the police officers and Pugh lied about the entire incident.
Although defendant has not challenged the sufficiency of the evidence to support his conviction, we have reviewed the record and are convinced that a rational trier of fact could have found every element of the crime proven beyond a reasonable doubt. State v. Fuller, 414 So.2d 306 (La.1982).
Defendant's first specification of error concerns the following requests to the state:
b. Please inform the defendant of the existence of any oral confession or statement of any nature, made by *298 the defendant, which the State intends to offer into evidence at trial. Please include information as to when, where and to whom said oral confession or statement was made. C.Cr.P. Art. 716.
c. Please furnish the defense with the existence, content, and substances of any oral statement which the State intends to offer into evidence made by defendant whether before or after arrest, in response to interrogation by a law enforcement officer. C.Cr.P. Art. 716.
The state responded:
b. The defendant made an oral statement to the victim and the arresting officers at the First District Police Station on February 15, 1983.
c. The defendant essentially denied doing the crime and said he only wanted to show the victim a good time.
The police officers testified that defendant told Pugh he had not intended to rob him. Officer Deal said defendant told Pugh, "It wasn't my idea. I was just there... I didn't know what they were going to do." Officer Small testified defendant said to Pugh, "I didn't rob you. I didn't want to rob youThe other guys wanted to rob you. I tried to stop them."
Defendant asserts the testimony of the police officers came as a "total surprise" to the defense, which was misled by the state's discovery response. Defendant argues the state's description of defendant's oral statement was exculpatory, but the officers' testimony regarding that statement was inculpatory and highly prejudicial. Defendant concludes the resulting prejudice requires reversal because the state failed to comply with C.Cr.P. art. 716(B) and (C) which provide:
B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
C. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer.
Initially, we note there is some question as to whether the state was required to divulge the contents of defendant's statement since it was made in a conversation between the victim and the defendant, not in response to police interrogation. Additionally, the state did not characterize defendant's statement as either exculpatory or inculpatory; rather, its response indicated that defendant's statement essentially denied wrongdoing but he admitted being on the scene at the time of the crime.
In our view, the state's responses accurately described the oral statement testified to by the police officers. We see no substantive discrepancy between the state's description of the statement and the officers' testimony. The statement on its face is exculpatory, perhaps a self-serving statement. The defendant was advised of its contents. The fact that the statement was later used by the state to impeach the defendant's testimony does not change the nature of the statement or the accuracy of the state's response. This specification has no merit.
Defendant's next assignment concerns the imposition of an "excessive" sentence because he chose to go to trial rather than plead guilty. Defendant attached to his brief an appendix of statistics gleaned from the docket book of Section B, Criminal District Court for Orleans Parish. These figures represent a compilation of all sentences in armed robbery and attempted armed robbery convictions from April, 1976 to September, 1979.
*299 Defendant claims the statistics point to a consistent, overwhelming disparity between sentences to defendants who stood trial and to defendants who pled guilty. Those same statistics were attached to the defendant's brief in State v. Oubichon, 422 So.2d 1140, 1141-42 (La.1982) which declined to consider them, declaring:
However, in the context of this case, we are unable to reach these questions. First, the defendant failed to introduce any of this evidence into the record of these proceedings. Only that which is in the record may be reviewed by this court. State v. Augustine, 252 La. 983, 215 So.2d 634 (La.1968). Second, the defendant did not make any objection at or before the time of his sentencing. While we have held that there is no need for a contemporaneous objection for the issue of excessive sentence to be raised upon appeal, State v. Lewis, 416 So.2d 921 (La.1981); State v. Bourgeois, 388 So.2d 359 (La.1980), State v. Cox, 369 So.2d 118 (La.1979), we have been careful to limit this rule to prevent the defendant from being relieved of all obligations for objection in connection with sentence review.
Defendant's counsel argues the "injustice" of which he complains is "couched in the past actions of a trial judge, never on the record, but heavy in the air of the courtroom." Our review must be confined to the record. For the reasons expressed in Oubichon, this Court cannot consider the compilation.
Defendant assigns the trial court's failure to comply with the sentencing guidelines of C.Cr.P. art. 894.1. He contends the trial court imposed an unlawfully excessive sentence which was not "particularized to this defendant" and is not supported by the assigned reasons or the record itself.
Article I, Section 20 of the 1974 Louisiana Constitution prohibits the imposition of excessive punishment. A sentence may be reviewed for excessiveness even though it is within statutory limits. State v. Soco, 441 So.2d 719 (La.1983). A sentence is unconstitutionally excessive if it is "so disproportionate to the severity of the crime as to shock the sense of justice" or "is nothing more than the purposeless and needless imposition of pain and suffering." State v. Montero, 433 So.2d 426 (La.App. 4th Cir.1983).
The factors used by the trial court in its determination of the sentence must be apparent to the reviewing court to ensure adequate review. The first three criteria of C.Cr.P. art. 894.1 are essentially aggravating circumstances which mandate imprisonment, while the remaining eleven factors are mitigating circumstances which "while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation." Although the possibility of parole, probation or suspension of sentence is interdicted in an attempt armed robbery case by R.S. 14:64, our courts have required that even where such benefits are not available, the trial judge must consider such mitigating factors in determining an appropriate sentence for a particular offender within the statutory range. State v. Soco, supra. Mere "tracking" of the aggravating factors enumerated in art. 894.1 A is insufficient to justify imposition of a maximum sentence; the trial judge must state the factual basis. State v. Kenner, 384 So.2d 413 (La.1980).
Before imposing sentence the court stated:
Okay. Of course, this is attempted armed robbery and you cannot be given a suspended sentence, because there's no suspension of sentence permitted in armed robbery cases. The Court further finds that because of the fact that you are presently on probation, and you committed another more serious crime while on probation, that there is an undue risk that you will commit another crime soon as you are released.
The Court feels that you are [in] need of correctional treatment in a custodial environment that can be provided most effectively by committing you to an institution. You must remember that *300 you viciously pistol whipped the victim in this case. Throughout your trial, and coming into this Courtroom you displayed no remorse for having committed this crime.
The trial judge established that defendant, who was 19 years old, had pled guilty to simple burglary on November 11, 1982, only 2½ months before he committed the instant attempted armed robbery, and had been given 2 years probation. Thus, in this case the trial court's conclusions concerning the "undue risk" of defendant's committing another crime and the necessity for lengthy incarceration (two of the aggravating factors delineated in art. 894.1) are amply supported in his reasons and in the record. Likewise, the third aggravating circumstancethat "a lesser sentence will deprecate the seriousness of the offense" is supported by the trial judge's comment about the particularly vicious method by which defendant perpetrated this crime.
The record fully supports the conclusion that this crime was heinous and among the worst in its class. The defendant and his partners picked out an innocent stranger partying on Bourbon Street, put a gun to his face, and demanded money. When the frightened victim attempted to escape, defendant pushed him to the ground and mercilessly bludgeoned him in the head with a gun. There is every indication the savage beating would have continued until the victim was comatose or dead if the police had not intervened.
The trial judge also cited defendant's lack of remorse. This Court agrees that a defendant who lies about every aspect of his crime, attempts to exonerate himself by blaming his companion, and accuses the victim of illegal drug solicitation, shows little inclination towards remorse or rehabilitation.
In State v. Montero, supra, at 428, this Court stated:
Although the trial judge need not articulate every aggravating and mitigating circumstance, the record must reflect that the sentencing guidelines were considered in particularizing the sentence to the defendant.
We note the trial judge did not refer to the mitigating factors in Art. 894.1. However, the circumstances of the offense negate the applicability of any of those factors. There was neither provocation nor excuse, and defendant knew his beating would cause the victim "serious harm." With regard to the sixth factor, the record does not indicate any interest by defendant in compensating the victim for his loss or injuries. The fact that defendant committed this crime only 2½ months after conviction of another felony, and while on probation for that crime, contravenes the applicability of the factors listed in art. 894.1 B(7)-(10). As to art. 894.1(B)(11), there is no indication that defendant has any dependents or that his imprisonment would entail "excessive hardship to himself." Thus, defendant's youth appears to be the sole mitigating factor, but age alone does not render his sentence so severe as to "shock the sense of justice."
Perhaps the trial judge may have been influenced by the jury's obvious leniency in convicting defendant of attempted armed robbery, rather than the completed offense. In view of the victim's testimony that defendant and his companions took his watch, jacket and cash, the court may well have felt that defendant deserved the maximum sentence, which is only ½ of the 198 year potential sentence for the greater offense.
Our Supreme Court has expressly sanctioned the imposition of a maximum sentence for an "attempt" conviction in certain situations when the trial judge feels the jury exercised leniency in giving a responsive verdict. In affirming the maximum sentence in State v. Freeman, 409 So.2d 581, 587 (La.1982), the court noted:
Leroy Freeman was given a maximum sentence of five years for attempted cruelty to a juvenile because the trial court concluded that he was guilty of the larger offense of cruelty and had been given lenity by the jury.
Similarly, State v. Kimble, 407 So.2d 693, 699 (La.1981), affirmed the maximum sentence *301 for manslaughter when the defendant was charged with second-degree murder, rejecting the defendant's argument that "the probation officer was attempting to second guess the jury." Kimble said:
The pre-sentence investigation report indicated that defendant Kimble had demonstrated, by his actions, a flagrant disregard for human life and had been shown leniency by the jury in being convicted of manslaughter. The report recommended that defendant receive the maximum allowable sentence.
This Court finds the trial judge did not abuse his discretion in sentencing the defendant to 99 years. The conviction and sentence are affirmed.
AFFIRMED.