528 So.2d 679 (1988)
STATE of Louisiana, Appellee,
v.
Johnell DEAN, Appellant.
No. 19619-KA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1988.
*681 McLeod, Swearingen, Verlander, Dollar, Price & Noah by John T. Scott, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., James A. Norris, Jr., Dist. Atty., Kathy R. McCoy, Asst. Dist. Atty., Monroe, for appellee.
Before JASPER E. JONES, FRED W. JONES, Jr. and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
After having been charged with attempted second degree murder, the defendant Dean was tried by jury and found guilty of attempted manslaughter (R.S. 14:31, 27). The defendant was sentenced to prison for five years. He appealed, reserving two assignments of error, claiming that the State failed to prove he had specific intent to kill and that the sentence imposed was constitutionally excessive.
For the reasons hereinafter explained, we affirm the conviction and sentence.
Factual Context
On the evening of May 29, 1986 the victim, Michael Robinson, two friends, Michael Chisley and Michael Handy, and the victim's brother, Anthony Robinson, attended the annual Carroll High School Talent Show in Monroe. After the talent show, the victim and his two friends left the school, intending to return to the victim's home. Before they had left the school property, they were approached by the defendant, Johnell Dean. Dean addressed the victim and asked if he (the victim) remembered him (the defendant). The victim answered in the affirmative. No other words were spoken but the two faced off momentarily. The victim and his friends then resumed their trek home. After they had gone approximately 50 yards, the victim heard the defendant approaching from behind and began to turn. Before the victim could complete the turn, Dean had stabbed him in the upper back. The victim and his friends then ran in one direction and the defendant ran in another. After the victim had run some distance, his friend, Chisley, caught up with him and pulled the protruding knife out of the victim's back. Chisley discarded the knife and they proceeded to the house of the girlfriend of the victim's brother, which was on the way to the victim's house. Upon arrival, the police were called. Police who arrived in response to the call were told by the girlfriend of the victim's brother, Cassandra Kelly, that Johnell Dean had committed the stabbing. Prior to this time neither the victim nor the victim's friends knew the defendant's name, although they all remembered him from a previous encounter. The victim was taken to St. Francis Hospital where he was treated and released.
At trial, the victim positively identified the defendant, Johnell Dean, as being his assailant. Michael Handy also identified the defendant at trial as being the one who stabbed Michael Robinson.

Assignment of Error No. 1
The defendant, by this assignment, claims the State did not prove beyond a reasonable doubt and, therefore, no reasonable trier-of-fact could have found that Johnell Dean had the specific intent to kill the victim, Michael Robinson.
The defendant was found guilty of attempted manslaughter, in violation of La.R. S. 14:27 and 14:31.
La.R.S. 14:27 provides in part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. (emphasis added).
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any *682 person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
La.R.S. 14:31 provides:
Manslaughter is:
1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed: or
2) A homicide committed, without any intent to cause death or great bodily harm.
a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor or directly affecting the person; or
b) When the offender resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.
In a criminal prosecution the State has the burden of proving beyond a reasonable doubt every element of the crime.
Specific intent to commit a crime is an element of an attempted offense. La. R.S. 14:27. More specifically, specific intent to kill is an element of the crime of attempted manslaughter. State v. Butler, 322 So.2d 189 (La.1975); State v. Odom, 511 So.2d 1214 (La.App. 2d Cir.1987), writ denied, 515 So.2d 446 (La.1987); State v. Turner, 440 So.2d 834 (La.App. 2d Cir. 1983). Hence, a conviction for an attempted offense must rest upon sufficient proof that the offender actively desired to cause the proscribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. La.R.S. 14:10 and 14:27. See State v. Parish, 405 So.2d 1080 (La.1981), on remand, 429 So.2d 442.
Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the action and actions of the defendant. La.R.S. 15:455; State v. Graham, 420 So.2d 1126 (La.1982); State v. Fuller, 414 So.2d 306 (La.1982). The determination of whether the requisite intent is present in a criminal case is for the trier-of-fact. See State v. Huizar, 414 So.2d 741 (La.1982) and State v. Butler, supra. In reviewing the correctness of such determination, the Court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier-of-fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Huizar, supra.
The determination to be made in the instant case, then, is whether the facts and circumstances presented to the jury, when viewed in a light most favorable to the prosecution, were sufficient to convince reasonable jurors beyond a reasonable doubt of Dean's intent to kill Michael Robinson.
At trial, evidence was brought out that this encounter was not the first hostile encounter involving the victim and the defendant. Officer Taylor, the investigating officer, stated that when he first stopped Dean to question him several days after the stabbing incident, Dean admitted stabbing Robinson. Dean explained that on May 28, 1986, the night before the stabbing, he and Robinson had gotten into a fight and that Robinson had struck him *683 with a board or stick. These facts supply a motive for the stabbing and could lead a reasonable juror to conclude that this act was one of revenge or retribution committed with the specific intent to kill.
Evidence of the instrumentality used and the severity of the injury inflicted on Robinson, could also lead a reasonable juror to conclude that Dean had the specific intent to kill. State v. Butler, supra. The severity of the victims' injury was apparent from the testimony of the victim's friend who removed the knife; from the officer who responded to the call; and from the physician who attended the victim at the hospital.
The victim's friend, Michael Chisley, testified at trial that he was the one who removed the knife from Robinson's back. He testified the knife blade was a 3-4" long and almost half of it was stuck in the victim's back. When asked how he pulled the knife out of Robinson's back, Chisley replied, "Well, it was kind of stuck for a little while so I had to pull on it a couple of times and yank it out." Chisley also testified that Robinson and he were forced to slow down in their return home because Robinson had lost "quite a bit of blood."
Officer Taylor testified that when he arrived in response to the call about the stabbing, he found the victim, "lying in the street" with a puncture wound to his upper back area. The officer then saw to it that the victim got emergency medical treatment.
Dr. Jan Kohout testified that he treated the victim at the St. Francis Hospital emergency room. Dr. Kohout stated that Michael Robinson had sustained a stab wound to his back at the level of the second thoracic vertebrae. The doctor testified that the wound was ¾ of an inch deep. The trial judge allowed the victim to stand before the doctor at trial as the prosecutor asked questions concerning the proximity of stab wound to vital organs. The doctor pointed out approximately where such organs were located in the victim's body. The doctor testified that the victim was fortunate in that the wound was in an area where muscle tissue was thick and that the puncture would have had to have been directed downward another four to five inches to penetrate the lung. When asked if the wound would have been life-threatening if moved to the right or left from where it actually was, the doctor responded in the affirmative. Had the knife missed the shoulder blade to the right, the muscle tissue would have been thinner and it would have been easier to penetrate the lungs. The doctor also testified that depending on the victim's position at the time the wound was sustained a similar wound to the victim's left would have been life-threatening. When asked, "At the positions to the right or left, what depth would be necessary to penetrate the lungs?", the doctor responded, "Not too deep. I would guess perhaps a little bit deeper than this wound but not much. My estimate would be about one and one-half, two inches." Had the lung been punctured, the doctor testified, the victim could have suffocated. The doctor stated that depending on the angle and depth of the wound, the victim could have sustained neurological or sensory damage to nerves emanating from the spine and lost muscle function. The possibility of puncturing the heart or aorta was also mentioned as having the possibility of bringing on immediate death. The doctor testified that Robinson had not lost enough blood to require an infusion of blood. After the wound was treated and sutured up, Robinson was sent home.
The foregoing testimonial evidence leads to the conclusion that a reasonable trier-of-fact could have concluded that the defendant had the requisite specific intent to kill when he approached the victim from behind and plunged a knife into his back.
The defendant, as part of this assignment of error, also points to the following deficiencies at trial as grounds for reversal.
The defendant argues that no weapon was offered into evidence and that witnesses' testimony regarding what was done with the weapon is in conflict. It is the testimony of the victim's friends, Michael Robinson, Michael Chisley, and Michael Hardy that the victim ran from the scene with a knife still in his back. Officer Taylor *684 testified that Dean had told him that he had "[thrown the knife] away or something like that. He said he really didn't know what happened to it." However, the defendant's own witness, Tyrone Johnson, stated at trial that he saw the victim running from the schoolyard with the knife still in his back. Even though the weapon was not recovered nor introduced into evidence, there is ample testimonial evidence and physical evidence (the scar from the wound) from which a jury could reasonably conclude that a knife was in fact the weapon used in the stabbing.
Defendant also points to several disparities in the testimony as to the exact time the stabbing took place and the time the victim was checked into the emergency room. The victim and the friends who accompanied him to the talent show testified that the stabbing took place around 11:30, soon after the show ended. However, the medical report shows the victim was admitted to the emergency room at 11:10 p.m. These disparities are insignificant in light of the testimony of Robinson, Hardy and Chisley that the defendant was the one who perpetrated the stabbing.
There is no disparity in testimony, as the defendant claims, as to where the victim was found by police upon responding to the call. Chisley testified that "By the time we got in front of Cassandra's house, that's on Owl Street, the police came to the place." Officer Taylor testified that he found the victim lying in the street in the 3400 block of Owl Street. This testimony is consistent.
The defense has also attempted to discredit the testimony of Officer Taylor by alleging that he has recently been indicted for attempted theft and malfeasance in office. It has been asserted that Taylor has since been dismissed from his employment with the Monroe Police Department. Attached to defendant's brief and reference made to therein is a newspaper clipping concerning Taylor's alleged misconduct.
None of this information was introduced at trial and may not be considered as part of the record before this court. Courts of Appeal have no authority to receive or review evidence not contained in the trial court record. State v. Augustine, 252 La. 983, 215 So.2d 634 (1968); State v. Oubichon, 422 So.2d 1140 (La.1982); State v. Hardeman, 467 So.2d 1163 (La.App. 2d Cir.1985); State v. Smith, 447 So.2d 565 (La.App. 1st Cir.1984); State v. Williams, 454 So.2d 295 (La.App. 4th Cir.1984).
After a sufficiency review of the evidence as to the element of specific intent, finding the standard of Jackson v. Virginia, supra, met, this assignment of error is without merit.

Assignment of Error No 2
The defendant has asserted that the sentence imposed upon him was unconstitutionally excessive and that the trial court failed to give sufficient weight to La.C.Cr. P. Art. 894.1 sentencing guidelines.
The maximum imposable hard labor sentence the defendant was exposed to at sentencing was ten and one-half years. La.R.S. 14:31 and 14:27(D)(3). He received a five year sentence. La. Const. 1974, Art. 1 § 20 prohibits the imposition of excessive punishment. A constitutionally excessive sentence is one that is grossly out of proportion to the severity of the crime or makes no measurable contribution to acceptable goals of punishment and is hence nothing more than a purposeless and needless imposition of pain and suffering. State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985), reh'g. denied, 473 U.S. 921, 105 S.Ct. 3547, 87 L.Ed.2d 670 (1985); State v. Richardson, 463 So.2d 853 (La.App. 2d Cir.1985); State v. Bolden, 501 So.2d 942 (La.App. 2d Cir.1987). However, the role of the appellate court in reviewing allegedly excessive sentences is not to substitute its own judgment for that of the trial court, but rather to correct manifest abuses of discretion. State v. Jackson, 445 So.2d 62 (La.App. 2d Cir.1984). A trial judge is generally afforded wide discretion in imposing sentences within the statutory limits and such sentences should not be set aside as excessive absent a manifest abuse of that discretion. State v. Milton, 469 *685 So.2d 309 (La.App. 2d Cir.1985), writs denied, 475 So.2d 778, 475 So.2d 1102 (La. 1985).
In determining whether a sentence imposed is excessive, the sentencing court must consider two interrelated criteria. First, the record must reflect that the trial court considered the factors set forth in Art. 894.1. The next step is for the reviewing court to determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The Art. 894.1 sentencing guidelines provide the criteria to consider in determining whether a sentence is excessive. While a trial judge need not articulate every aggravating and mitigating circumstance outlined in the guidelines, the record must reflect that he considered the guidelines in particularizing the sentence to the defendant. State v. Hobdy, 494 So.2d 1321 (La.App. 2d Cir.1986), writ denied, 502 So. 2d 110 (La.1987). If there has been adequate compliance with the sentencing article, a sentence will not be set aside unless a manifest abuse of the trial judge's wide sentencing discretion is shown. State v. Nealy, 450 So.2d 634 (La.1984); State v. Woods, 494 So.2d 1258 (La.App. 2d Cir. 1986).
In sentencing the defendant in the instant case, the trial judge stated for the record that he had reviewed the pre-sentence investigation report, mindful of the guidelines provided by Art. 894.1. The trial court stated for the record the application of many of these guidelines to the case at hand. The trial court found that there was no question but that the defendant's criminal conduct not only threatened but actually caused harm. Indeed, the trial judge found that the defendant was lucky that the stab wound did not cause death. He found that the defendant must have contemplated that his criminal conduct would threaten such serious harm. He found no other excuse or reason to justify the defendant's criminal conduct. The trial judge carefully reviewed the defendant's history of prior delinquency and criminal activity for the record. He noted that the defendant had not led a law abiding life for a substantial period of time before the commission of the offense for which he was then being sentenced. The list of his prior crimes against persons include fighting, contributing to the delinquency of a juvenile, aggravated assault, disturbing the peace and simple battery. The pre-sentence investigation report indicates his property crimes include criminal damage to property and unauthorized use of a moveable. The trial court noted that although his previous crimes were misdemeanors, most were crimes against persons and seemed to be escalating in their severity. It was apparent to the trial judge that the defendant had not learned from his prior punishments and that he was in need of further incarceration. The trial judge found no evidence of remorse exhibited by the defendant for the stabbing. Based on the defendant's prior criminal record, character and attitude the court found the defendant was likely to commit other crimes and was not likely to respond affirmatively to probationary treatment. The trial court noted that the defendant had two children but also noted that the defendant was providing them with no support whatsoever. Therefore, the court concluded that imprisonment would not entail excessive hardship. Based on the record before the court and the nature of the particular crime, the court found that the defendant was in need of correctional treatment in a custodial environment that could be provided most effectively by his commitment to an institution. The court found that a lesser sentence than the one being imposed would deprecate the seriousness of offenses. The trial court's compliance with the Art. 894.1 guidelines was more than adequate.
The circumstances of the case indicate that the defendant viciously attacked the victim from behind using a deadly weapon. The attack was not in response to any immediate provocation or in any way self-defense. Evidence of the defendant's backgound indicates that this was but the latest in a series of crimes against persons committed by the defendant. Given these circumstances and the defendant's background, *686 the midrange sentence of five years at hard labor is not unconstitutionally excessive.
Decree
For the reasons set forth, defendant's conviction and sentence are AFFIRMED.