PEATROSS, J.
| iDefendant, Bobby Neal Whalen, was charged with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. Following a jury trial, Defendant was convicted of the responsive verdict of attempted possession and was sentenced to 6 1/2 years at hard labor without benefit of probation, parole or suspension of sentence. Defendant appeals his conviction and sentence. For the reasons stated herein, Defendant’s conviction and sentence are affirmed.

FACTS

On August 19, 2005, Shreveport police responded to a “shots fired” complaint at a residence on Cook Street. Upon arrival at the residence, officers observed two males on the front porch who matched the description given by the complainant. One of the males was Defendant. There were fresh bullet holes in a tree in the yard. Police searched the residence and found two handguns under the mattress in one of the bedrooms, along with a Louisiana Purchase food stamp card and a compact disk. Also in the bedroom were school books and papers bearing Defendant’s name. The bedroom belonged to Defendant’s girlfriend, Hortensia Ruffins, who told the officers that Defendant had been staying with her in that bedroom. One of the responding officers was Defendant’s probation officer. It is not disputed that De-fondant was a convicted felon and was on probation at the time of this offense. Defendant was taken into custody and read his Miranda[1] rights. Thereafter, he made a statement to officers that the guns were not his, but that “his boy” had brought the guns to him. He further | gstated that his fingerprints and DNA would be on one of the guns as he had handled the gun, but he maintained that the guns were not his.
As previously stated, after hearing the testimony, the jury convicted Defendant of attempted possession and the court sentenced him to 6½ years without benefits. This appeal ensued.

DISCUSSION

Assignment of error number one (verbatim): There is insufficient evidence to prove the guilt of defendant for the offense of [attempted] possession of a firearm bg a convicted felon.

When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d *535 Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
Specific intent to commit a crime is an element of an attempted offense. La. R.S. 14:27. Hence, a conviction of an attempted offense must rest upon sufficient proof that the offender actively desired to cause the proscribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. La. R.S. 14:10, 14:27. See State v. Parish, 405 So.2d 1080 (La.1981), appeal after remand, 429 So.2d 442 (La.1983); State v. Cheatham, 38,413 (La.App. 2d Cir.6/23/04), 877 So.2d 164, writ denied, 04-2224 (La.6/24/05), 904 So.2d 717.
^Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Kahey, 436 So.2d 475 (La.1983); State v. Wilhite, 40,539 (La.App. 2d Cir.12/30/05), 917 So.2d 1252, writ denied, 06-1078 (La.11/9/06), 941 So.2d 35. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the proscribed criminal consequences to follow his act or failure to act. State v. Davies, 35,783 (La.App. 2d Cir.4/5/02), 813 So.2d 1262, writ denied, 02-1564 (La.5/9/03), 843 So.2d 389, citing La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Ellis, 28,282 (La.App. 2d Cir.6/26/96), 677 So.2d 617, writ denied, 96-1991 (La.2/21/97), 688 So.2d 521.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975); State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988). In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, supra; State v. Huizar, supra.
The provisions of La. R.S. 14:95.1(A) state, in pertinent part, that it is unlawful for any person who has been convicted of a crime of violence as defined in R.S. *536 14:2(13) to possess a firearm or carry a concealed weapon.
^Constructive possession of a firearm occurs when the firearm is subject to the defendant’s dominion and control, even if only temporary; moreover, constructive possession contains an element of awareness or knowledge that the firearm is there and a general intent to possess it. State v. Ball, 31,515 (La.App. 2d Cir.12/9/98), 733 So.2d 1, aff'd, 99-0428 (La.11/30/99), 756 So.2d 275. As previously noted, specific intent is required because we are dealing with attempted possession.
A jury has the prerogative to compromise and render a lesser verdict whenever it could have convicted as charged. State v. Mitchell, 35,970 (La.App. 2d Cir.5/8/02), 818 So.2d 807; State v. Bryant, 33,078 (La.App. 2d Cir.3/1/00), 754 So.2d 387. Even if an offense is legislatively designated as responsive by La. C. Cr. P. art. 814, a defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. La. C. Cr. P. art. 814(C). State v. Mitchell, supra; State v. Johnson, 30,078 (La.App. 2d Cir.12/10/97), 704 So.2d 1269, writ denied, 98-0382 (La.6/26/98), 719 So.2d 1054.
We note initially that Defendant’s prior felony is second degree battery, which is specifically listed in R.S. 14:2(13) as a crime of violence. We now turn to the testimony at trial in the case sub judi-ce, summarized as follows. First, Sergeant James Scott Dickard of the Shreveport Police Department testified that, on the date of the incident, he received a call from headquarters regarding shots fired. Sergeant Dickard related that the call gave a description of two people in the front yard of a house on Cook Street. When he arrived at that location, Sergeant Dickard saw two people in the | sfront yard who matched the description, one of whom was Defendant. Subsequently, back-up arrived, including a couple of probation and parole officers. Sergeant Dickard noticed fresh bullet holes in a tree by the house.
On cross-examination, Sergeant Dickard indicated that, when he came in contact with Defendant, Defendant did not have a gun, no one claimed to have seen him fire a gun and he was not charged with firing a gun.
Next, Corporal T.W. Adgate testified that, on the day of the incident, he also responded to a call concerning shots being fired. Corporal Adgate further testified that he was dispatched to a location at East Wichita and Cook Street and was given a description of two black males, one wearing orange shorts and one wearing blue jean shorts. When he arrived at the location, Corporal Adgate saw two suspects matching the description given by headquarters. One of the two suspects was Defendant. Both suspects were handcuffed and detained at that time.
Corporal Adgate testified that he searched the perimeter of the house for weapons, but did not go inside the house until arrival of the probation and parole officers and the homeowner, Hortensia Ruffins, who was also Defendant’s girlfriend. Corporal Adgate also testified to seeing fresh bullet holes in a tree in the front yard. According to Corporal Ad-gate, he had seen Defendant at that residence numerous times and thought that Defendant lived there. One of the probation and parole officers, however, recognized Defendant and indicated that the Cook Street address was not the one Defendant had listed with the probation office.
17According to Corporal Adgate, Ms. Ruffins indicated that Defendant stayed at the house. After learning this, Corporal *537 Adgate went inside and searched the residence. In a bedroom, he found two handguns under a mattress, a .40 caliber handgun and a smaller caliber handgun. Ms. Ruffins indicated to Corporal Adgate that she shared that particular bedroom with Defendant. Corporal Adgate also testified that some of Defendant’s clothing was found there as well. Based on these findings, Defendant was arrested. Corporal Adgate testified that he advised Defendant of his rights and that Defendant signed a waiver of rights card. Corporal Adgate then testified as follows:
[Defendant] told us that we were going to find his prints and his DNA on the guns, that he handled them prior.
On cross-examination, Corporal Adgate admitted that not all of the calls that he had received concerning the Cook Street residence or that neighborhood involved Defendant, and Corporal Adgate admitted that he did not see anyone shooting at the tree. He further agreed that no one told him that they saw Defendant shooting at a tree, and he did not contest that the bedroom in which the guns were found was also Ms. Ruffins’ bedroom. When asked how many people were in the house, he responded that there were “some kids in the house I believe.” When asked how many adults were around, he responded: “They came from everywhere around. I have no idea.”
Corporal Adgate also stated on cross-examination that an incident report made by Parole Officer Sherry Cone indicated that ^Defendant made a post-Miranda statement that was taped. Corporal Ad-gate indicated that Defendant’s statement should have been recorded on his mobile visions systems (MVS) videotape. He further indicated, however, that he did not have the tape with him because he was not asked to bring it. He explained that such tapes were kept “like three to six months” and then usually recorded over. When asked why this was done, he responded: “Cost prohibitive.”
Officer Mark Hutchinson, a probation parole officer, testified next. Officer Hutchinson testified that he and another parole officer happened to be going by Cook Street at the time of the incident and stopped to offer assistance. He recognized Defendant, because he was handling his case on probation. Officer Hutchinson verified that the owner of the house (Ms. Ruffins) gave permission for a search and testified that Defendant stayed at the house with her. Officer Hutchinson further indicated that, during the search of the house, weapons were located in a corner bedroom. They also found male clothing in the bedroom, as well as books with Defendant’s name inside. Officer Hutchinson testified that in between the mattress and the box spring of the bed where the guns were located was an identification card for food stamps with Defendant’s name on it. Ms. Ruffins denied knowing that the guns were there, while Defendant, after being Mirandized and asked if he knew the guns were there, responded that “his boy” had “brought the guns by.” According to Officer Hutchinson, Defendant indicated that he had touched the guns, but that the guns did not belong to him.
| gParole Officer Paula Powell was accompanying Officer Hutchinson on the day of the incident. Officer Powell testified that she participated in the search of the residence and was present when the other officers found the weapons. Officer Powell talked with Ms. Ruffins and indicated that, when asked if Defendant was her boyfriend, Ms. Ruffins responded, “Yes.” Ms. Ruffins also indicated that some paperwork and clothing found in the bedroom belonged to Defendant and that he slept there.
*538 Officer Cone testified next, corroborating the location of the guns and other items. She further testified that she photographed the exterior of the residence and the bedroom where the guns were found.
Finally, Amy Muller of the Shreveport Police Department’s crime scene unit was qualified as an expert in fingerprint identification and analysis before she testified. Ms. Muller’s testimony established Defendant’s prior felony.
The only witness called by the defense was Sergeant Dickard who testified that, when he arrived at the residence, he could only remember two people on the premises, both of whom were on the porch. One was Defendant, but Defendant did not have a gun.
Defendant argues that no one saw him shoot a weapon and no gunshot residue test was conducted on his person or clothing. He further argues that the weapons he allegedly attempted to possess were located between two mattresses in a bedroom that was shared with his girlfriend, that there were no locks on the bedroom door and that there were children in the house. Defendant also adverted to the testimony of Officer Adgate that |1flthere were a number of adults who “came from everywhere around.” According to Defendant, the State failed to exclude the reasonable possibility that any of the other individuals present had placed the guns between the mattresses on that date or a prior date. Furthermore, Defendant pointed out that he never denied that he used the bedroom where the guns were found; and, thus, it would be expected that some of his personal belongings would be found there, such as school books, identification cards and clothing.
As for his post-Miranda statement that the police would find his fingerprints and DNA on one of the guns because he had handled it, Defendant points out that there was no tape of his “alleged confession” even though Officer Adgate had a mobile system that should have captured Defendant’s statement.
On the other hand, the State argues that there was sufficient evidence to show that Defendant had specific intent, as well as general intent, to constructively possess the two firearms. The State points to the fresh bullet holes in the tree in the yard of the Cook Street house where Defendant often stayed and had spent the previous night. The State further notes that the guns and Defendant’s food stamp card were found under the mattress in the bed in which he had spent the previous night with Ms. Ruffins and that Ms. Ruffins told the police that the guns found under the mattress did not belong to her. In addition, the State emphasizes that Officer Ad-gate testified that Defendant admitted to him that he had handled one of the Inweapons and that Officer Adgate would likely find his DNA and fingerprints on the weapon.
We find the evidence in this case to be sufficient to support the conviction of aat-tempted possession of a firearm by a convicted felon. In so concluding, we find the following cases to be instructive. In State v. Paul, 05-612 (La.App. 5th Cir.12/14/06), 924 So.2d 345, the defendant’s father allowed officers inside the home, and defendant’s probation officer went into the bedroom that the defendant had identified as his on a prior visit. The officer saw a gun barrel protruding from between two pillows on the side of the defendant’s bed; personal documents also were found in the room, including a checkbook, a framed certificate and a paycheck stub all bearing the defendant’s name. The father denied at the time that the gun was his and further denied awareness that the gun was in the bedroom. The father acknowledged that *539 the bedroom where the gun was found was the bedroom where his son slept, but said that his son only stayed there two to three times a week and was really staying at his grandmother’s house. The appellate court affirmed the conviction for possession of a firearm by a convicted felon, despite the fact that the father later testified that his friend had loaned the gun to him (the father) after the house had been burglarized and that the father had been sleeping in the son’s bedroom with the gun when the son was not home in case the perpetrator returned. The father asserted that he did not claim the gun earlier because he was on probation at his job and he was afraid he would lose his job if he got into trouble; the 112father admitted that he never told the officer that the gun belonged to him, but the father stated that he had told this information to his son’s lawyer.
In State v. Jackson, 97-1246 (La.App. 5th Cir.4/13/98), 712 So.2d 934, writ denied, 98-1454 (La.10/16/98), 726 So.2d 37, the appellate court affirmed the defendant’s conviction for possession of a firearm by a convicted felon where a handgun was found under the mattress of the defendant’s bed in his mother’s home. The defendant was convicted despite the fact that his mother had testified that, shortly before the officers’ search, several relatives had stayed as guests in her home and that some of the relatives stayed in the defendant’s bedroom.
In the case sub judice, Ms. Ruffins denied that the weapon belonged to her. She also admitted that Defendant was staying in the bedroom with her. The presence of Defendant’s clothing and books in the bedroom supports the fact that the two shared the room. Defendant had easy access to this area, and the presence of his food stamp card in close proximity to the guns in the hiding place suggests Defendant’s knowledge of the presence of the guns. Furthermore, Defendant admitted that his fingerprints and DNA likely would be found on one of the weapons. Thus, a jury could reasonably have concluded that Defendant had the specific intent to possess the guns.
The mere fact that there were children staying in the home does not defeat sufficiency. The officer’s testimony that there were adults who “came from everywhere” does not seem to indicate that these adults were present before the police began to investigate, but, instead, that they | ^gathered after it was apparent that an investigation was underway. Finally, despite the defense’s attempt to cast some doubt on the voluntariness of Defendant’s post -Miranda statement, voluntariness was not raised as an issue vis-a-vis admissibility, and the mere fact that the State did not produce a tape recording of the statement has very little weight where the witnesses all indicated that the statement was voluntary. On this record, we conclude that the evidence is sufficient to support the conviction even without Defendant’s statement.

Assignment of error number two (verbatim): The sentence imposed is excessive for this offender and offense.

As stated, Defendant was sentenced to 6½ years at hard labor without benefit of probation, parole or suspension of sentence. His probation in the previous matter was revoked and that sentence was ordered to be served concurrently with the sentence in this matter. While the judge mentioned at one point that the maximum penalty was 7½ years and a fine of not more than $2,500, the judge did not assess any fine to Defendant.
The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set *540 forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where 114the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2d Cir.1/28/04), 865 So.2d 284, writs denied, 04-0834 (La.3/11/05), 896 So.2d 57 and 04-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747, writ denied, 04-2606 (La.6/24/05), 904 So.2d 728.
Second, a sentence violates La. Const, art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
Defendant’s claim of excessiveness is meritless. The trial court clearly articulated its reasons for the sentence imposed. At the sentencing hearing, the trial judge reviewed the facts of the present incident, as well as 11Bthe facts of Defendant’s prior conviction when, at age 17, he struck his victim in the head with a brick. Defendant was almost 19 at the time of sentencing for the current offense. The judge noted the very short period of time between being placed on probation for the former offense and commission of the instant . offense. The judge also reviewed Defendant’s juvenile court record, which was extensive and included 12 different entries such as misdemeanor theft, illegal possession of stolen property, disturbing the peace, traffic violations, discharge of a firearm and criminal trespass. The judge concluded that Defendant had a pattern of misconduct and lawbreaking and that, while most of it consisted of “low level misdemeanors,” the pattern indicated that Defendant “doesn’t take any of this very seriously....”
The judge also recalled that, during jury selection, one of the prospective jurors was a school bus driver who remembered Defendant as one of the students who rode her bus. She related to the judge several incidents of misconduct on the bus involving Defendant, including cussing, being disrespectful and, on one occasion, trying to push another child through the window of the bus.
After stating that he had considered all the circumstances and factors under article 894.1, the judge concluded that there was an undue risk that, during any period of suspended sentence, Defendant would commit other crimes. He further found Defendant to be in need of correctional treatment in a custodial environment and *541 that a lesser sentence would deprecate the seriousness of the offense. The most significant mitigating circumstance Incited by the judge was Defendant’s youth. The judge stated that, if Defendant had no juvenile history and had a non-violent previous felony conviction, a lesser sentence would have been imposed. Finally, the judge noted that the jury gave Defendant a substantial break by returning the responsive verdict. On this record, we conclude that the sentence imposed in no way shocks the conscience.

CONCLUSION

For the reasons stated herein, the conviction and sentence of Defendant, Bobby Neal Whalen, are affirmed.
AFFIRMED.

. Miranda v. Arizona, 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122 (1969).